The first case on our call today is agenda number 8, number 129751, Aaron Davis et al. v. Jeffrey Yenchko. Counsel for the appellant, are you prepared to proceed? Yes, Your Honor. Good morning, and may it please the Court. I'm Assistant Attorney General Lee Jahnig for the appellant, Chief of the Firearm Services Bureau of the Illinois State Police. This Court should reverse the Circuit Court's judgment because the plaintiffs lacked standing to bring this challenge to Section 8N of the Floyd-Card Act. The Court can reverse on this threshold basis, which goes to the accused's justiciability, and it need not reach any other issue. Counsel, let me ask you a question. So why do they lack standing? And give me an example of someone who would have standing. So the plaintiffs lacked standing because they held Floyd cards when they brought this lawsuit. If they had brought this lawsuit while their Floyd cards were still revoked during that period of nearly a year, then they would have had standing, and we might be talking about mootness here. But that's really what the standing issue is in this case, that the plaintiffs held Floyd cards when they brought this lawsuit, and so there was no redress that the Court could provide to these plaintiffs. So if they had filed a lawsuit at the time that their Floyd cards were still revoked and they had not yet been returned, then they would have had standing. Yes, and to be clear, I think there would still be a mootness issue there, but we don't even get to that in this case because in this case the plaintiffs had Floyd cards when they brought their lawsuit. Now, the other way a plaintiff can generally have standing is if there's an imminent danger that they will be subject to the statute that they're challenging. But that's also not present here because there's nothing in the record that suggests that they will be charged with another felony, and that would lead to the statute potentially applying to them again. So because they don't meet either of those two ways that the plaintiffs could have standing, the case sort of fails on that threshold justiciability question, and there's no need for the Court to get into any of the other issues. The Circuit Court conflated standing and mootness, so basically holding that because the Court determined that one of the exceptions to mootness was met, that therefore the plaintiffs had standing. But there's no authority that suggests that a mootness exception can excuse a lack of standing. And there's good reason for that because what mootness exceptions do is they allow courts to address what was once a live controversy. So if they had brought their lawsuit, you know, while their Floyd cards were revoked, and then that issue became moot. But to apply those exceptions to standing would mean that courts could issue opinions even when there had never been a live controversy. And that's sort of the very definition of an advisory opinion, which this Court has repeatedly said is not permitted. So when we talk about mootness, we're basically saying we can't give you any relief because you've gotten your cards back and it's no longer an issue for the Court to resolve. Is that what you mean when you talk about mootness? Well, so I think a mootness situation would be present if the plaintiffs had brought their lawsuit while their Floyd cards were revoked and they needed to get some sort of relief for the Court, and then that issue became moot. But again, we don't even get to that. And then there would be a question about whether to apply a mootness exception, which sometimes allows courts to reach out in sort of rare situations and resolve a moot question. But we don't even get to that in this case because, again, there's no authority for applying mootness exceptions to excuse a lack of standing. So what makes it moot in this instance if we were to look at that question? Right, I think so. If the Court were to overlook the issue of the lack of standing, it would then sort of need to address whether – I mean, there's no dispute that the case would still be moot because of the restoration of the Floyd cards. But then the Court would have to evaluate whether a mootness exception applied. And no mootness exception does apply here, as we explain in our brief. The public interest exception, this is not the kind of sort of broadly applicable public question that sort of needs a court to reach out and resolve. And the exception for cases that are capable of repetition and evading review is also not met here because of the length of time. And as I mentioned earlier, there's no concern that – there's no suggestion in the record that this issue might recur again with respect to these plaintiffs. So getting the cards back impacts their standing and also impacts the fact – well, basically makes the case moot? Yes, it's sort of an issue of timing. So because the plaintiffs had their Floyd cards when they brought this lawsuit, there was no standing and the inquiry just kind of ends there. If the plaintiffs had brought their lawsuit while their Floyd cards were revoked, then we would have kind of a mootness issue. And I suppose if the Court were to overlook the lack of standing here, it would then need to address the mootness issue and the mootness exceptions. But because those exceptions don't excuse a lack of standing, the Court may not even reach those exceptions if it rules on the issue of standing. And I think – and again, I think that the fact that – you know, it's sort of a little kind of conceptually difficult to even really be talking about mootness when there was no standing because, you know, it's kind of – it sort of raises the question of, well, when did the issue become moot? And the answer is it was kind of moot even before they brought their lawsuit, and that itself illustrates why this is a standing case and not a mootness case. And actually, the circuit courts and the plaintiffs, really only authority that they rely on is the appellate court's decision in Kishinsky. But that really illustrates this difference between mootness and standing. So that case was really kind of a classic example of mootness where the plaintiffs had a Floyd card. It was revoked because an order of protection was entered against him. He then filed his lawsuit, so there was a live controversy. And then that order of protection was removed. He got his Floyd card back, so the issue was then moot. But we don't have – we don't even get to that point here. We don't even have that here because there was never a live controversy in this case because the plaintiffs had their Floyd cards even when they brought their lawsuit. Counsel, can you – can it be moot and lack of standing at the same time? I think – I think so. That sort of comes back to this question of timing, you know, the lack of standing. One way to think about it is to say that, well, the case was moot to begin with, and that's sort of one way to think about standing. But that still sort of raises the questions of, you know, the way that we kind of know that this is a standing case instead of a mootness case is that we can – we sort of ask, well, when did the issue become moot? When was there a live controversy? And the answer is there never was because the plaintiffs – you know, the issue was kind of moot from the beginning for one way to put it. Do you decide the standing question at the time the complaint is filed? Yes. I mean, I think it's possible for a plaintiff to sort of in some ways lose standing, but in this case, you know, there's no question that there was never standing to begin with. Is part of the problem our definitions here? Both definitions of standing and mootness have some element of the fact that the court cannot provide any kind of relief, right? Correct. So the same doctrinal basis for both ideas, right? The court cannot do anything if there's no standing, if there's no – if the case is moot? Yes. They're both sort of components of whether a case is justiciable. But the difference is that in mootness, there are – you know, there are ways that courts can reach out and decide moot questions that, you know, that once presented a live controversy. And I mean, I think the capable repetition yet evading review is kind of the really exemplary exception here because it's – you know, that arises in a situation where, you know, something is too short to really be litigated. And if it was never – you know, if there wasn't a mootness exception, it would never be decided. But that sort of reasoning doesn't apply when you're thinking about standing and whether there's an issue of standing because the plaintiffs, you know, they could – all that standing requires is that the plaintiffs who bring the lawsuit have an injury that can be remedied by the declaratory judgment that they're seeking. And, you know, in this case, we just don't have that here. The – I do want to address the plaintiff's argument that this sort of injury in the past from the statute is sufficient. This would also, much like applying mootness exceptions to standing, this argument would also be a radical departure from this court's precedent. There's no authority suggesting that, you know, a past application of the statute that has concluded and that's not likely to recur would provide standing to challenge a statute in perpetuity. And all that – it's true that the court has some language about, you know, the – a plaintiff has standing to challenge a statute if they have sustained an injury from the statute. But what that language does is it distinguishes that sort of current injury that I was talking about earlier with an imminent injury. So all it means is that a plaintiff doesn't need to wait until their actual – you know, until the statute is actually applied to them, if it's about to. You know, if there's a situation where a plaintiff's been charged with a felony, but they haven't gotten the letter saying that your FOIA card is revoked, they still – it's imminent that it's going to apply to them, so that plaintiff would also have standing. But again, we don't have anything like that here, and there's no authority suggesting that a past application of the statute standing alone confers standing to challenge that statute in perpetuity. I also want to briefly address the plaintiff's arguments about waiver. First of all, the defendant did not waive the issue of standing. He raised this issue in his motion to dismiss under Section 219, and that preserved that affirmative defense. And even if there was any sort of concern about that, it was raised again in the summary judgment briefing, to which the plaintiffs did not respond. So they would have even forfeited this, you know, waiver argument in any event. And again, we're aware of no authority that suggests that after raising an affirmative defense in a motion to dismiss, you then have to raise it again in your answer. There's – the plaintiff's authorities about merger do not support that proposition. So for these reasons, the court should reverse the judgment on this threshold basis that the plaintiffs did not have standing. It need not reach the issue of mootness exceptions or the Second Amendment. If the court were to look past this standing defect and, you know, consider it to be an issue of mootness instead of an issue of standing, as I mentioned, the mootness exceptions that the plaintiffs have put forward do not apply here. And so the case would still be dismissed as moot, and the judgment should be reversed on that basis. If the court were to look past both of those justiciability issues and reach the merits, respectfully, we would suggest that the court could wait for the Supreme Court's decision in Rahimi on the Second Amendment issue. That case, we expect a decision this term, so in the next month or so. And that presents a kind of similar question about whether a federal statute that prohibits firearms possessions by those who are under domestic violence restraining orders violates the Second Amendment. So we expect, you know, guidance on the application of the Bruin standard to a sort of kind of legislative categorical determination similar to the one we have here. And then the other issue kind of to get into, if the court were to address the merits, is the scope of the judgment and the claim that issue here. So the plaintiffs say that they're bringing an as-applied challenge, which would be a challenge to the statute as applied to them only. That's what an as-applied challenge is. But the circuit court held that the statute was unconstitutional with respect to every person charged with a felony. So just on that kind of on that concession from the plaintiffs, that going further and holding the statute unconstitutional with respect to anyone besides plaintiffs, at least that part of the judgment should be reversed. And even if the plaintiffs kind of did want to challenge the statute with respect to others besides themselves, to bring a facial challenge effectively, as we explained in our brief, that argument is foreclosed by their acknowledgment that some people charged with some felonies could have their court cards revoked. And in any event, the fact that the statute is constitutional with respect to these plaintiffs would foreclose a facial challenge anyway. What was the concession that someone charged with murder? Is there something along that effect that this, you know, would not apply to them? Is that the concession? So I think because a facial challenge says that the statute is unconstitutional in all applications, acknowledging that a person charged with murder could have, you know, the statute could be applied to them on a constitutional basis, that would say, well, then it's not all applications, and so the statute's necessarily not facially unconstitutional. And in any event, the fact that the statute is constitutional with respect to these plaintiffs would foreclose that facial challenge anyway. So, again, if the court were to look past the justiciability problems in this case and reach the merits, the Supreme Court in Bruin explained how to analyze Second Amendment claims. First, the court looks to whether the plain text of the Second Amendment covers the relevant conduct, and if it does, it then becomes the state's burden to show that the law comports with the nation's historical tradition of firearms regulation. At the first step, the plaintiff's possession of firearms while under this felony charge is not covered by the Second Amendment's plain text. The Supreme Court has cleared that the Second Amendment covers possession of firearms for self-defense by those considered law-abiding and responsible and not dangerous. This does not cover the plaintiffs because while they were under this felony charge, they had conceded that there was probable cause that they recklessly endangered others with firearms. So that would sort of suggest that that shows that their claim would fail at the first step. When you say they had conceded, be more specific. How did they concede? Sure, it was because they waived their preliminary hearing, and so by doing that, they acknowledged that there was at least a quantum of evidence that amounted to probable cause that they had committed this crime. But they had not been convicted, and there's still the presumption of innocence, right? That's correct. The presumption of innocence doesn't apply to this question of whether, you know, to sort of the scope of the right, which we know from both the Supreme Court's explanation that that's, you know, that's really a trial right, and it goes to, you know, the burden of proof at trial, as well as the fact that there are other constitutional rights. You know, the First Amendment, and we list a few others on page 36 of our opening brief, that can be kind of, that can be lessened or, you know, that have a lesser scope when a person is under indictment. Are you reading too much into the fact that they waived their right to a preliminary hearing? I mean, people do that all the time, and they still maintain their innocence, so it's not as if they said, you know, I'm assuming, Judge, we agree that there's probable cause here. They basically waived the right to a hearing. So I guess my first response is I don't think that the waiver of the, or the concession of probable cause doesn't affect, or the waiver of the preliminary hearing does not affect, you know, whether the plaintiffs were considered law-abiding. If anything, the kind of legislative determination that when a person, you know, has this charge brought against them, and there is at least a quantum of evidence to support that charge, then they're considered to be not law-abiding for purposes of the Second Amendment until that charge is resolved. And again, we know that because the Supreme Court has said that a felony conviction is not the only way that a person is considered not law-abiding. It's one way, and that was, you know, that's what the Supreme Court said in Heller, that a felony, you know, restrictions on those with felony convictions is a non-exhaustive example of something that would not fall under the First, excuse me, the Second Amendment scope. But by saying it's a non-exhaustive example, it's sort of acknowledging that there are other ways. Are there cases where it's specifically been said that having a pending charge makes you a non-law-abiding citizen? No, there are not, because Bruin is a relatively new case, and there isn't much law applying it. There's some federal cases, actually, that we cite in our brief that reach that conclusion. But that would be a reason for this Court to, you know, kind of have the benefit of the Supreme Court's decision in Rahimi, which we expect, you know, will provide some guidance on the contours of who is considered law-abiding and responsible. But even if the plaintiff's possession of firearms did fall under the Second Amendment scope, restricting that possession was still constitutional because it comports with the nation's historical tradition of firearms regulation. And so that inquiry doesn't require that the modern law and the historical law be identical. It instead requires that – it asks whether the modern law and the historical law imposed a similar burden on the ability to use firearms for self-defense, and whether it did so for similar reasons. And the three categories of historical analogs that the defendants provided, both independently and together, satisfy that inquiry. So the plaintiff's constitutional challenge fails at both steps of the Bruin inquiry. So, again, even if – you know, the Court should reverse on the standing issue and need not even get into mootness exceptions, much less the Second Amendment question. But if the Court were to reach those issues, the case should still – the judgment should still be reversed. And so if the Court has any further questions, we ask the Court to reverse the circuit court's judgment for those reasons. Thank you. Thank you very much for your argument. Counsel for the appellee. May it please the Court, Counsel Thomas Magg for the appellees, Erin Charles Davis. This is, of course, a Second Amendment case, addressing perhaps as best I can in the order that counsel made her argument. I'll start with standing. To have standing to challenge a statute on constitutional grounds, generally speaking, there are two requirements. One is that you've been injured by the statute. The other is you're about to be injured by the statute. In this case, my clients, the appellees, actually had their Floyd cards actually suspended for approximately a year, plus or minus, because of the imposition of the statute. The statute has not been repealed. If they were to be charged similarly in the future, they would be subject to the exact same prohibition. Thus, they have standing. But the fact of the matter is that the time that this suit was filed, both of these individuals had active Floyd cards. Is that accurate? That is my understanding. And that when that was challenged in the motion to dismiss and the motions for summary judgment, in the order of the trial court, they don't – the judge doesn't address that. It goes right to mootness. But don't you have to get past the hurdle of having an actual live controversy to decide before you can even look at whether or not it's moot or it can be decided? We have an actual live controversy here in that my client's Floyd cards at one time were actually suspended. The statute remains on the books. It is enforced routinely thousands, if not tens of thousands of times a year. And if there was a similar charge against my client, it would be enforced against them again. Counsel, I'm concerned that you're having to use the word if a lot. And does that cut it as far as standing? I mean, when we're talking about an injury and whether or not a person has standing, don't you have to show that at the time the lawsuit is filed, the requested relief would redress the plaintiff's alleged injury? I think that goes more to mootness than standing. Well, that's from Cahokia from this court talking about an actual controversy. In order to have standing, specifically under 1983, which is the 1983 case, you are required simply to have sustained an injury. My client sustained an injury, i.e. having their Floyd card revoked. I understand that there's a question of potential mootness that can be addressed. Let me just stay there in standing. You argue that they sustained an injury. Yes. This lawsuit does not look for damages for a past injury. That's because the 11th Amendment in 1983 of the statute do not allow damages against a state entity in their official capacity. So you're not looking for damages for past injury, correct? Because the law does not allow if that is accurate. Okay. What this lawsuit does, the declaratory judgment and a request for injunctive relief is look into the future, correct? Correct. Okay. So where is the injury that triggers the ability to bring a case that looks into the future? The injury that triggers it is the revocation of the Floyd cards. In the past? In the past. Okay. I mean, it's trouble. I mean, you can see what we're saying. This lawsuit looks prospectively. It doesn't look back. It doesn't say I was injured, therefore I have damages. It looks forward, what will happen in the future, correct? It is seeking to prevent a similar injury in the future because of the damage that took place in the past. Okay. And this, as you, I think you're agreeing, this is an as-applied challenge. This is an as-applied challenge. There are many circumstances where the statute would be constitutional. Well, so these people, the Davises, this case is just about them and their situation, correct? It's not about anybody else. There are no other names plaintiffs. That is accurate. It's not a class action. The statute itself purports to suspend FOIA cards or allow the ISP to suspend FOIA cards in two relevant circumstances. I think one relevant circumstance, but there's two related circumstances. One is where there's a federal or state law that prohibits possession of a firearm by a person. It doesn't apply to the Davises. The second, the relevant portion, is there's a provision of the statute that purports to allow the ISP to suspend FOIA cards if there's a federal or state statute that prevents persons like the Davises from acquiring a firearm or ammunition. There is a federal statute, 18 U.S.C. 922, and it's in Nancy, I believe it's the exact quote, that prohibits persons charged but not convicted of felonies, not from possessing firearms. They can keep the ones they've got while they're under indictment or information, but prevents them from acquiring new firearms while they're under charge. That is what this case is about, is the state police interprets,  aside from constitutionality issues, that that triggers the section in of the FOIA Card Act which requires suspension of FOIA cards when a person cannot acquire a firearm. My clients did have their FOIA cards suspended because of such statute. The statute is routinely enforced. It is on the books. Counsel has argued about waiver of preliminary hearings. The simple fact of the matter is my clients' FOIA cards were suspended slash revoked before they could have had a preliminary hearing and before they filed a waiver of a preliminary hearing. Can you just for a moment fill that idea? What impact is there for a waiver of a preliminary hearing? I was about to make the point that I think it's a red herring, the whole preliminary hearing, in that in my experience, and I think it's fairly standard everywhere, is that a preliminary hearing is not a finding that a person actually committed a crime. Of course not. It's not a plea of guilty. But does it have some legal impact? The only legal impact that it has, as near as I can tell, is to allow the state to proceed with charges without a grand jury indictment. Literally nothing else. It concedes probable cause. It does not challenge probable cause. I recognize there's a fine point there, and I'm not trying to be evasive, but I don't think it concedes anything. I think it simply says we're not asking for this hearing, the same as we're potentially waiving a formal reading of the indictment. We don't need you to read the charges to us. We can read it ourselves. Well, it's more than just reading the charges. We understand the statute requires for the commencement of a felony prosecution there must be either an indictment or a finding in a preliminary hearing, correct? That's what the statute says for the commencement of a prosecution. Yes. And so by not requesting a hearing, by conceding, the parties have made some sort of legal statement, correct? Yes. It has some effect. But I would note that to get past the probable cause standard of a preliminary hearing can literally have a police officer, and I've seen it happen, testify that he read an article in the newspaper that suggests the defendant did something. I mean, it's an extremely weak standard with hearsay allowed. Certainly pursuant to such a finding, however, the court can impose all sorts of conditions on a defendant who is charged with a crime for which there is probable cause, correct? There are all sorts of conditions a court can impose that for a person who's not been charged by indictment or preliminary hearing. The court could not impose those conditions, correct? Subject to constitutional protections, I agree with that statement. But in this case, the Second Amendment under the Bruin test requires you, assuming you get past the point of text analysis, I'm trying to answer your question here, to look back at what the law was, depending on which sources you read, either at the time of the adoption of the Second Amendment or arguably at the time of the adoption of the Fourteenth Amendment. I think the time of the Revolution is the more appropriate standard myself, but I understand there is some argument in the literature on that. And prior to 1925, as near as I can tell, there were no restrictions on even actual convicted felons possessing at least long arms. And prior to 1925, other than in New York City apparently, there were only six states that restricted actual convicted felons from possessing handguns. The prohibition that we're talking about here is a complete 20th century creation, almost the latter third of the 20th century, 1968 specifically. There is no historical predecessor, in accordance with the second step of Bruin, to allow the suspension of the right to keep and bear arms, either for a felony back in the Revolutionary War era, although this case doesn't go that far, that's beyond the scope of this case, but more importantly a person is merely charged with a crime, whatever that crime is. I agree that the court, in an appropriate circumstance, following some sort of hearing, could impose certain conditions. For instance, if John Dillinger, historical bandit, were arrested and bond was allowed, I think the court, following a hearing with sufficient evidentiary information, could impose a restriction on firearms. But that's not this case. This is an ipso facto, you've been charged, therefore your rights are eviscerated case, at least for the foreseeable future. And there is no precedent in the historical American jurisprudence until the mid to late 20th century for anything coming close to that. Counsel, I wonder, I want to hear your thoughts on whether or not the Illinois State Police are accurately interpreting the federal statute that allows them to revoke a person's FOIA card when they're charged with a crime. You touched on this briefly, but I'm looking at specifically when the statute talks about a person being prohibited from transporting or acquiring firearms in interstate commerce. Is that what your clients were doing? No. My clients did not transport anything in interstate commerce. The problem that your Honor is pointing out is that the federal constitution limits the powers of the U.S. Congress. And in order to avoid a facially unconstitutional federal statute, Congress, using its powers to regulate under interstate commerce and foreign nations, et cetera, has put a jurisdictional nexus in the federal prohibition. Arguably, a firearm made in the state of Illinois that has never crossed the state line would not be subject to the federal prohibition under 922GN. But, of course, the overwhelming majority of firearms out there are. I think a case could be made that a person in Illinois shouldn't have their FOIA card revoked because they could possess an Illinois-made firearm under 922 or acquire an Illinois-made firearm even under 922GN. But we really haven't addressed that because it's an extremely highly technical, fact-specific scenario. I certainly understand and appreciate the argument. And I won't say that that thought didn't cross my mind. But I think that is technical commerce clause jurisprudence beyond the scope of the Second Amendment. Can I ask you another question about the Court's order here? Please. The Court ordered that, among other things, that issued a permanent injunction. Yes. Restraining defendant from suspending FOID cards pursuant to the statute, a person is charged with a felony but not convicted of a felony. Yes. As you've agreed, your case here is a case of as-applied challenge and not a facial application. That is accurate. The State argues that this injunction is too broad in that it impacts everyone and not just your two clients as-applied challenge. I disagree. We're not asking that all persons whose FOID card could potentially be suspended under this subsection that the statute be prohibited from being enforced. Isn't that what the Court ordered in the injunction? No, it isn't. For instance, it's a violation of federal law for a person convicted of a misdemeanor crime of domestic violence to possess a firearm or a person adjudicated a sufficient degree of mental incompetence to possess a firearm. This same statute would require the State police to revoke that person's FOID card. As applied to those scenarios and every other potential scenario other than merely being charged with a felony, the statute remains in full force in effect. But for anyone in the State of Illinois who is charged with a felony, this injunction would sweep them all in, right? I agree with that. Okay. The State argues that that's too broad where your claim is an as-applied claim only as to your two clients. It's not as-applied only as to my clients. It is as-applied as the person's charged with a felony but not convicted. That is an as-applied challenge as well. An as-applied challenge is a specific plaintiff, for instance, or a specific fact scenario. A facial challenge would require the statute be unconstitutional in all fact scenarios as to all persons. And as we've conceded, there are scenarios where this statute, the State statute challenge, would be constitutional. It just happens not to be in the case where a person is merely charged as opposed to being convicted of a felony. Of course, this court's motto, which in Latin is behind me, translates to hear the other side. In this case, nobody heard the other side of the Davis' argument before suspending their FOIA cards. Literally, it was done within days, potentially double-digit hours, after they were charged. We're not saying, again, that with an appropriate evidentiary hearing, that a FOIA card could not be revoked, suspended, invalidated on a charge with sufficient evidence. We're simply saying this particular statute, as is applied to persons merely charged and nothing else, is unconstitutional. But it's not a due process argument you're making. Go ahead, please. Are you making a due process argument? The Second Amendment is incorporated as against the States by the Fourteenth Amendment due process clause. You're talking about having a hearing. I think it could be done with a hearing. This is getting into advisory. Of course, it's not really appropriate for me to tell the legislature how to write a statute. But they would be on much better grounds if there was some hearing, like in a DUI case, before a driver's license is revoked. There's 45 days of which a person charged with a DUI could challenge the summary suspension. I don't know if that would still satisfy Second Amendment due process or not, but it would certainly be a much better argument for the State. Unless there are any other questions, it appears I'm running close to my time. Thank you. I ask that you affirm the lower court. Thank you very much, Mr. Mack. Rebuttal from the appellant. Thank you, Your Honor. Three points. First, I want to clarify kind of how the statute works because there was a question of whether something is being interpreted. And there's no sort of confusion about the statute here. The way that Section 8N works is it says that the State police can decline the issue or revoke a FOIA card if any federal statute prohibits a person from acquiring or possessing firearms. And there is a federal statute, that's Section 922N, that prohibits a person charged with a felony from acquiring firearms. So the State statute is broader than the federal statute. It sort of says, you know, if there are these federal prohibitors that are either about acquiring or possessing firearms, then the State prohibits even possession. And there's nothing, you know, in the applying Bruins text and history test that suggests that, you know, the State has to be in lockstep with the federal statute in that respect. And then to the second point, there was also some discussion about how there was no individual hearing about specifically, you know, revoking a FOIA card. But again, applying the text and history test, there's nothing in the historical record that suggests that an individual hearing is required in order to restrict a person's possession of firearms. We presented, you know, several historical analogs that were on this more categorical basis. And then more broadly, the Bruin very clearly explains that the historical law and the modern law do not need to be identical. And the analogs that we presented here, you know, obviously they're not identical because, you know, it's been 250 years. But they're, you know, they're historical analogs about restricting a person's possession on a temporary basis, on, you know, some in a categorical sense and some based on some legal process that is short of a conviction. So kind of with all of those different approaches, there clearly is, you know, a historical basis supporting this law under the Bruin standard. But then my final point, just to go back to the issue of standing, because again, that's really what the threshold issue of this case is about. The plaintiffs argue that they have standing because they revoked, their FOIA cards were revoked for nearly a year. But as this court has said, when we're talking about a declaratory judgment, you know, seeking prospective relief challenging a statute, there must be more than just, the courts use the language, a wrong committed and an injury inflicted. There has to be an ongoing controversy. And that's what we don't have here. And then with respect to this question of, you know, that this statute might be applied again, either to them or to others. With respect to applying the statute to the plaintiffs again, again, that that is pure speculation. There's nothing suggesting that they will be charged with another felony. And then with respect to applying the statute to others, you know, it's well established that a plaintiff cannot assert the constitutional rights of others if they themselves do not have standing. That would be redressed by, you know, the declaratory judgment that they're seeking. That's ultimately what the problem of standing comes down to, is that when the plaintiffs brought this lawsuit, even if they had prevailed and, you know, got this declaratory judgment, it does not do anything for them. And so that's kind of what the core standing problem is here. And so for those reasons, unless the court has any further questions, we again ask this court to reverse the circuit court's judgment. Thank you. Thank you very much. Agenda number 8, number 129751, Aaron M. Davis et al. v. Jeffrey Yancheco will be taken under advisement. Thank you both for your attendance. Thank you.